The Law Offices of Avrum J. Rosen, PLLC
Attorneys for Hilary Street
38 New Street
Huntington, New York 11743
Fred S. Kantrow

UNITED STATES BANKRUPTCY COURT      RETURN DATE: **4/12/10**
EASTERN DISTRICT OF NEW YORK      TIME: **9:30 a.m.**
------------------------------------------------------------x

In re:      Chapter 7
     Case No. 09-78070-reg

    HILARY STREET,

                    Debtor.
------------------------------------------------------------x
FIRST NATIONAL BANK OF OMAHA,

                    Plaintiff,

    -against-      Adv. Pro. No. 10-8016-reg

HILARY STREET,

                    Defendant.
------------------------------------------------------------x

### DEFENDANT'S MOTION TO IMPOSE SANCTIONS AGAINST FIRST NATIONAL BANK OF OMAHA AND ROBERT S. COOPER, ESQ. PURSUANT TO 28 U.S.C. § 1927 AND TO GRANT FURTHER RELIEF

HILARY STREET, the debtor and the defendant (the "Defendant") in this adversary proceeding, by and through her attorneys, The Law Offices of Avrum J. Rosen, PLLC, respectfully submits this as and for her motion (the "Motion") to impose sanctions against both First National Bank of Omaha ("FNBO") and Robert S. Cooper, Esq., ("Cooper") pursuant to 28 U.S.C. § 1927 and to further bar Cooper from commencing actions in this Court pursuant to 11 U.S.C. § 523 without first obtaining permission from this Court, pursuant to this Court's powers under 11 U.S.C. § 105, and states as follows:

    1.      The Defendant filed a voluntary petition pursuant to chapter 7 of title 11 of the

1

United States Code (the "Bankruptcy Code") on October 25, 2009.

2. By Summons and Complaint (the "Complaint") dated on or about January 19, 2010, First National Bank of Omaha, the plaintiff (the "Plaintiff") commenced an action pursuant to section 523(a)(2)(A) of the Bankruptcy Code, seeking to except the debt owed to the Plaintiff.[1]

3. By letter dated January 19, 2010, a copy of which is annexed hereto as Exhibit "A", the Defendant's counsel advised the Plaintiff's counsel that the Plaintiff's Complaint failed to allege any fact that would support a finding that the debt owed to the Plaintiff could be excepted from discharge pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

4. The letter further advised counsel that if the Complaint was not withdrawn, the Defendant would seek sanctions pursuant to Rule 9011 of the Bankruptcy Rules, as well as an award of attorneys' fees and costs associated with the defense of the action pursuant to section 523(d) of the Bankruptcy Code.[2] Despite that, the Plaintiff did not withdraw its frivolous Complaint.[3]

---

[1] 11 U.S.C. §523(a)(2)(A) provides, "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement representing the debtor's or an insider's financial condition".

[2] 11 U.S.C. §523(d) provides, "If a creditor requests a determination of dischargeability of a consumer debt under section (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust".

[3] In her companion motion, the Defendant seeks to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PLAINTIFF'S HISTORY OF COMMENCING ACTIONS TO EXCEPT DEBT FROM DISCHARGE

5. The Defendant undertook an extensive investigation into the patterns and practices of both FNBO and Cooper and found astonishing results. FNBO and Cooper engaged in the practice of commencing wholesale actions against debtors without any legal basis and without any investigation as to the merits of those actions to except its debts from discharge in the Eastern District of New York and the Southern District of New York. They have also engaged in this pattern and practice throughout the United States. In addition, this is not a recent trend. Rather, this abuse has been going on for years. This is despite the fact that several courts have dismissed this form complaint for failure to state a cause of action and at least one court has sanctioned them for this practice.

6. In *First Deposit National Bank v Stahl, (In re Stahl),* 222 B.R. 497, 1998 Bankr. LEXIS 1862 (Bankr. W.D.N.C. 1998), a copy of which is annexed hereto as Exhibit "B", Cooper found himself in the same position he finds himself today. In that case, Cooper had referred the case to local counsel in North Carolina.[4] The complaint in that case alleged the following:

> (i) That the debtor has possession of a First Deposit National Bank Visa credit card account and that on October 5, 1995 the balance was zero; (ii) Between October 6, 1995 and December 19, 1995 the Debtor took two cash advances totaling $4,000.00; (iii) Between July, 1995 and August 1996 the Debtor opened three credit accounts (one a new car loan) and that by the petition date these loans had balances in excess of $10,000.00; (iv) At the petition date the Debtor had no disposable income; (vi) The debtor incurred the $4,000.00 cash advance at a time when she was unable to meet her existing financial obligations; (vii) When the Debtor received the $4,000.00 cash advances, she represented that she had the 'ability and/or the intention to repay

---

[4] The *Stahl* Court found as a fact that "Attorney Robert Cooper of Rochester, New York referred the plaintiff's case to attorney Christine M. Lamb. Mr. Cooper has represented the plaintiff in prior adversary proceedings objecting [to] the discharge of consumer debts pursuant to 11 U.S.C. § 523(a)(2)(A) in this Court". *In re Stahl* at *4-5.

said debt, upon which representation the Plaintiff justifiably relied'; (viii) At the time the Debtor obtained the $4000.00 in cash advances, however, the Debtor *intended to deceive the Plaintiff in that she either had no intention to repay said debt to the Plaintiff* or the *Debtor knew or should have known that she had no ability to repay said debt to the Plaintiff;* (ix) Therefore, the Debtor obtained money from the Plaintiff by false pretenses, false representations, or actual fraud and the debt is nondischargeable pursuant to 11 U.S.C. 523(a)(2)(A). *Id.* at 4. [Emphasis added].

7. A review of the complaint in the instant adversary proceeding reveals similar, if not the same allegations in support of the current adversary proceeding.

8. The Court should note that in *In re Stahl*, the defendant's counsel made a demand for a request for admissions. In attorney Lamb's request for admissions she noted that Cooper had commenced similar actions in which she was involved, and therefore asked that the Plaintiff to admit that he drafted the form complaint. In response, the plaintiff stated "Robert S. Cooper assisted the attorney of record who received, reviewed, and executed, and served said documents". *Id.* at *5.

9. The defendant sought summary judgment against the plaintiff, and the Court granted the defendant's motion. In its decision granting summary judgment in favor of the defendant, the Court stated:

> The plaintiff asks the court to rule that if the bank throws raw meet to a hungry lion, the bank should expect him not to eat because he is not able to pay for it. The bank expects this debtor to use the same kind of judgment that it or its lawyer might use. Hindsight is better than foresight and the evidence herein indicates no evidence at all of this woman's intent not to pay but substantial evidence of her intent to pay. I get numerous solicitations such at [sic] that in the case herein each week in my mail and I do not take advantage of them because I do not need the money. But, if I came home one day and had a wife in the hospital needing a hysterectomy and had no insurance and two kids in the hospital with broken legs and I was out of a job and there was a $3,000.00 check in the mail that I could use to pay the doctors, you better believe that I would cash and spend it. These checks are sent unsolicited and the debtors see the money and they need it and they spend it thinking they can pay it back. They are eternal optimists. The banks are also eternal optimists in sending them this money assuming that they will get paid in all cases. The debtors have the

4

same optimism about paying as the banks have about receiving their money. The trouble is that they both just happen to be wrong in certain instances though neither had an intent to do anything wrong. *Id.* at *15-16.

10. The *Stahl* Court went on to discuss whether the imposition of an award of attorney's fees and costs was appropriate pursuant to section 523(d) of the Bankruptcy Code.[5] The *Stahl* Court concluded in that case "All of the elements of finding a lack of substantial justification under § 523(d) are present in the instant case. Other than reviewing Ms. Stahl's bankruptcy filings, the plaintiff made no real investigation to determine her intent. The plaintiff's own attorney admitted that the purpose of the Plaintiff's Initial Discovery was to 'try to determine of the plaintiff does have a lawsuit'. It should have been apparent to the plaintiff from the very beginning that this action was meritless." *Id.* at *23.[6]

11. The *Stahl* Court, in considering an award pursuant to section 523(d) held,

> Against the backdrop of the bankruptcy bar's nationwide flat fee practice for debtor representation, the plaintiff and attorney Robert Cooper devised the documents filed for the plaintiff in this and other adversary proceedings <u>solely for the purpose of extracting a settlement and Reaffirmation Agreement from the debtor</u>. The Complaint, the letter entitled 'SETTLEMENT OFFER', the proposed Reaffirmation Agreement, the November 20, 19965 letter, and Plaintiff's Initial Discovery, when taken together, clearly show an intention to send a signal to the debtor's attorney that defense of the plaintiff's allegations of nondischargability would be extensive and costly. Obviously, most Chapter 7 debtors cannot afford to pay for such a defense. Hence the plaintiff and Mr. Cooper have created just the dilemma they expected for

---

[5] 11 U.S.C. §523(d) provides, "If a creditor requests a determination of dischargeability of a consumer debt under section (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust".

[6] As in the case at bar, in *Stahl,* the plaintiff did not appear at the section 341(a) meeting of creditors, nor did it seek to take any examination of the debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rather, it sent the letter attached as Exhibit "C" hereto.

5

the debtor's attorney - - either settle or lose his shirt defending a costly case for which he may not be paid. This is why § 523(d) was enacted. In *In re Williamson* the court stated, 'the only way to prevent creditors from obtaining leverage over the debtor by first filing a suit and considering the merits later, is to require the creditor to pay the costs, including reasonable attorneys [sic] fees, incurred by a debtor who must defend a frivolous suit.' It is obvious that the attorney for the debtor in this case spent a considerable amount of time and effort in defending this adversary proceeding. In his brief he indicated that as of the date of the brief based upon billing as his usual hourly rates, the fees and expenses in this matter totalled [sic] $14,629.02. The attorney for the debtor has also requested a fee enhancement. In *In re Arroyo,* Case Number 96-12873-BKC-JAC, Adversary N0. 96-0795-BKC-AJC, United States Bankruptcy Court, Southern District of Florida, decided January 30, 1997, in a situation similar to the case at hand, granted the debtor's attorney a $5,000.00 fee enhancement. *Id.* at *23-25.

12. The Court went on to state, "Congress had the plaintiff in mind when § 523(d) was enacted. The tactics employed herein seeking to force the debtor to enter into a Reaffirmation Agreement or settlement are totally unreasonable. The defendant should be awarded all of her reasonable attorney's fees and recovery of costs". *Id.* at *26.

13. Upon a fee application made to the *Stahl* Court, the defendant's counsel sought approximately $17,000.00 for his work in defending the defendant. The Court awarded 50% of the amounts sought. Defendant's counsel moved for reconsideration and the Court, in *In re Sathl,* 222 B.R. 507 (Bankr. W.D. N.C. 1998) determined that fees granted in the amount of $17,754.38 was more appropriate. It did so because, as the Court stated,. "Richard M. Mitchell, attorney at law, testified in behalf of the defendant. Richard M. Mitchell testified as a fact witness and as an expert witness as consumer debtor's attorney. Mr. Mitchell has had prior dealings with attorney, Robert Cooper of Rochester, New York, who referred the case of the Plaintiff to local counsel. Mr. Mitchell testified that Mr. Cooper is an extremely aggressive attorney who attempts to succeed in his cases by intimidation and by forcing settlement. Mr. Mitchell's testimony is consistent with the Findings of Fact made by this Court in the Order Granting Summary Judgment". *Id.* at 508.

14. The Court went on to say, "Mr. Mitchell testified that to defend a case filed by or with the assistance of Robert Cooper requires a debtor's attorney to expend significantly more effort than might be expended in an adversary proceeding filed by other members of the creditor's bar." *Id.*

15. So, as early as 1998, Cooper knew that his form complaint was insufficient to obtain a judgment after trial excepting such debts from discharge. He also knew that his actions were sufficient to give rise to awards pursuant to section 523(d) of the Bankruptcy Code. However, Cooper did not allow this minor setback to deter him from continuing with this practice of filing complaints that clearly do not comport with the law. He did not change the practice of filing complaints without engaging in any due diligence. He kept doing exactly what he did in the *Stahl* case, presumably determining that an occasional misstep or imposition of a sanction or two was simply a cost of doing business.

16. In the Defendant's companion Motion to dismiss the adversary complaint, she lists a number of recent adversary proceedings in which Cooper is involved and in which FNBO is involved. The Court should note the cases ended, for the most part, in a confession of judgment on the part of the debtor/defendant. The Court may take judicial notice of the findings of fact and the pronouncements in the *Stahl* case. Cooper obtains these "confessions" of judgment or stipulations for exactly the reasons asserted by the expert testimony and the Court's conclusions. It is simply too costly for most debtors to defend such an action particularly in comparison to the amounts sought in the complaints.

17. If the listed cases in the companion motion were the only cases in which Cooper has engaged in such actions, perhaps the Court conclude that the matter is localized. However, that

7

is terribly far from the truth. Cooper's scheme has been implemented throughout the country, in numerous bankruptcy courts.

18. Listed herein are numerous actions commenced over the years seeking to except FNBO's debt from discharge. The complaints are the same form complaint used over and over again. The allegations are always the same. The computer type is always the same. The only difference is the name that appears on the signature block of the attorney. In other words, as was the case in *In re Stahl,* Cooper generates the complaints and farms them out to the local counsel.

19. The Court is respectfully directed to the following cases:

| Adv. Pro. No. | Debtor | Pro Se | Amount Sought | Disposition | District |
|---|---|---|---|---|---|
| 01-1186-jmd | Stacy | | $8,206.36 | COJ | NH |
| 03-9002 | Addison | | $10,171.50 | COJ | E.D. TX |
| 04-0049 | Cain | | $4,910.10 | COJ | M.D. FL |
| 08-1852 | Leon | | $4,445.44 | COJ | S.D. FL |
| 08-1846-jac | Contrears | | $6,097.31 | COJ | S.D. FL |
| 04-6057-bp | Baggett | | $12,728.73 | COJ | E.D. TX |
| 04-9006-mhm | Glueckert | | $9,917.95 | COJ | N.D. GA |
| 03-9176-jb | Long | | $7,120.71 | COJ | N.D. GA |
| 09-9020-cgm | Vincent | YES | $5,813.15 | COJ | S.D. N.Y |
| 09-1496-jmp | Hamid | YES | $8,500.00 | COJ | S.D. N.Y. |
| 07-9016-cgm | McFarland | | $2,356.51 | COJ | S.D.N.Y. |

20. Clearly the 1998 action had no effect on Cooper. Apparently, Judge Drain's decision in 2007 in *In re Schuler,* Adv. Pro. No. 07-1006-rdd (Bank. S.D.N.Y. June 22, 2007) also

was not enough to put an end to Cooper's tactics.  In *Schuler,* the defendant's motion to dismiss the complaint as being factually inadequate, containing the same allegations used over and over and over again in Cooper's form complaint, failed to send the message to Cooper to "cut it out".  Again, a court's decision against his form complaint was simply a minor setback to an operation that continuous to generate thousands of dollars in fees for actions that should never be commenced in the first place.  If this case is not dismissed, the Debtor reserves her right to seek certification of a class action in this matter.  From the volume of cases filed, it would appear that this complaint is filed for each creditor of FNBO that files a chapter 7 petition.

21.     There can be no argument that there are times when a debt should be excepted from discharge.  Hence, the existence of section 523 of the Bankruptcy Code and the causes of action that exist within that section.  However, those causes of action provide the narrow exceptions to the discharge of a debt and they are construed narrowly against the creditor.  Commenting on the tactical consumer dischargability complaint, one court observed, "AT&T's case is analogous to a gun-slinger in the wild west without ammunition.  It does not survive.  This Court is not closing the 523(a)(2)(A) 'town gates' to credit card issuers.  Just don't ride into town firing blanks and kicking up dust in the hope of rustling up a settlement.  Come in armed with facts to prove fraud or you may be driven out of town with a 523(d) bullet in your tail".  *In re Chinchilla,* 202 B.R. 1010, 1018 (Bank. S. D. Fl 1996).  Thus, creditors have their respective rights, but they do not have the right to commence actions in the hope that the debtor will have no choice but to surrender in actions that should not have been commenced in the first place.

**SANCTIONS UNDER 28 U.S.C. § 1927**

9

22. 28 U.S.C. § 1927 provides that, "[A]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct". Cooper satisfies the requirements under section 1927 and his blatant disregard for being admonished in the past cries out for punishment in this case.

23. The fact that he is the attorney responsible for cranking out complaint after complaint making conclusory allegations in support of a determination that his clients are entitled to except their debts from discharge and that he has been told that his actions are unacceptable, he must be stopped with the imposition of some sanction that hits his pocketbook and makes him take notice that this behavior will not be tolerated any longer. The amount, like the award of a punitive damage for the wilful violation of the automatic stay provisions, must be significant enough that Cooper cannot simply chalk it up to the costs of doing business. That has been tried in the past, and from the fact that he continuous in the same manner, it just was not enough.

24. The debtors' bar should not have to deal with bogus complaints designed to force settlements in actions that are frivolous and without merit. As pointed out to this Court, many of the actions commenced by Cooper are against debtors without counsel. As the *Stahl* Court correctly pointed out, the costs associated with defending against such an action can be very high, and debtors are simply without the means to pay for such representation. Thus, their only solution is to surrender. That is terribly unfair to debtors seeking the fresh start.

25. The fact that this defendant has counsel willing to go the extra mile and piece together this web of frivolous complaints commenced by Cooper, whether by him directly or by the

farming out of his form complaint and other documents to various local counsel, should be rewarded as it will surely result in a benefit to not only this Debtor, but to the integrity of the bankruptcy system, to the Bankruptcy Courts that are overwhelmed with case filings and to other debtors who will not have to surrender and agree to make debts that are clearly dischargeable, deemed nondischargeable.

**SANCTIONS UNDER 11 U.S.C § 105**

26. Section 105(a) of the Bankruptcy Code provides, "[T]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title". Often referred to as the "plastic powers of the bankruptcy court" section 105 may only be used to "as a means to fulfill some specific Code provision". *In re 210 Roebling, LLC,* 336 B.R. 172, 176 (Bankr. E.D.N.Y. 2005).

27. In this case, the Court may use section 105 to carry out the provisions set forth in section 523(a)(2)(A) as the case law in this District has interpreted the elements that a creditor must allege and must satisfy. Cooper never alleges those elements that his client must satisfy in order to obtain a judgment excepting the debts from discharge. By failing to allege the appropriate facts that would give rise to a cause of action under section 523(a)(2)(A), Cooper thumbs his nose at the decisions in this District and at the Code itself.

28. This Court should put an end to these meritless actions commenced by Cooper by barring him from commencing any action against any debtor pursuant to section 523(a)(2)(A) until and unless he obtains permission from this Court. In this way, debtors shall not be forced into defending meritless complaints and they shall further not be placed in the unfortunate position of having to reaffirm debts that should otherwise be discharged.

29. Coopers' long and sordid history of engaging in these attempts to force settlements must finally be stopped, or at least sufficiently policed so that only valid complaints are before the courts. Clearly, as Cooper alleges in his vast set of complaints, he knows or should know that his complaints are facially insufficient and are designed to force settlements that should never be entered into.

## CONCLUSION

30. Debtors file chapter 7 petitions because they are in need of a fresh start. They have unsecured debt that makes it impossible for them to continue to meet their minimum obligations. Sometimes they have incurred medical bills, sometimes they have lost their jobs, sometimes they have helped out family members. It does not matter. The honest debtor deserves the fresh start. Surely, there are times that debtors are not entitled to discharge certain obligations and the Bankruptcy Code provides for that relief. But that does not mean that creditors are entitled to blindly file complaints in the hope of forcing settlements.

31. Cooper's actions are not limited to this District, nor are they limited to recent vintage. His actions have spanned districts and spanned years and he has been admonished previously, but he has not stopped. This Court has the opportunity to say to Cooper and his clients that this shall no longer be tolerated.

WHEREFORE, it is respectfully requested that this Honorable Court enter an Order imposing substantial sanctions against both the Plaintiff and Robert Cooper; Order that Cooper cannot commence any actions in this Court pursuant to section 523(a)(2)(A) without first obtaining Court authorization together with such other and further relief that this Court deems just and proper under the facts and circumstances herein.

Dated: Huntington, New York
February 26, 2010

        The Law Offices of Avrum J. Rosen, PLLC
        Attorneys for Hilary Street

BY:    <u>S/Fred S. Kantrow</u>
        Fred S. Kantrow
        38 New Street
        Huntington, New York 11743
        631 423 8527
        Fkantrow@avrumrosenlaw.com