UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

---

In re:  HILLARY STREET,                    Case No. 8-09-78070-reg

                          Debtor.          Chapter 7

---

FIRST NATIONAL BANK OF OMAHA,              **PLAINTIFF'S RESPONSE IN**
                                           **OPPOSITION TO DEFENDANT'S**
                          Plaintiff,       **MOTION TO COMPEL**
                                           **PRODUCTION OF DOCUMENTS**

            v.                             A.P. No. 8-10-08016-reg

HILLARY STREET,

                          Defendant.

---

TO:  HONORABLE ROBERT E. GROSSMAN
     UNITED STATES BANKRUPTCY JUDGE

       The Plaintiff, First National Bank of Omaha, by its attorney,
Robert S. Cooper, Esq., respectfully represents:

       1.    This Response is being made in opposition to the
Defendant's Motion to Compel Production of Documents.  The
Plaintiff hereby incorporates herein, its Response in Opposition to
the Defendant's Motion to Dismiss and Motion for Sanctions,
including all Exhibits attached thereto.

                **THE MOTION TO COMPEL SHOULD BE DENIED**
        **BECAUSE THE MOVING PARTY FAILED TO MAKE A GOOD FAITH**
            **EFFORT TO CONFER PRIOR TO FILING THE MOTION**

       2.    Pursuant to E.D.N.Y. Local Bankruptcy Rule 7007-1, prior
to filing a motion to compel disclosure, the moving party is
required to have made a good faith effort to confer.

> A discovery motion under Bankruptcy Rules 7026 through 7037 shall be supported by an affidavit or affirmation that the moving party <u>has made a good faith effort to confer</u> with the opposing party <u>to resolve</u> the issues raised by the motion <u>by agreement and without judicial intervention</u>, <u>but has been unable to reach an agreement</u>. The affidavit or affirmation shall describe the efforts to resolve the discovery dispute without judicial intervention. <u>The affidavit or affirmation shall specify any issues so resolved and the issues remaining unresolved</u>. The affidavit or affirmation shall be filed and served together with the motion. (emphasis added).

See Local Rule 7007-1. Also see Federal Rule of Civil Procedure 37(a)(1).

3. Defendant's counsel, however, did not make a good faith effort to confer. Instead, Defendant's counsel sent a letter on July 5th, 2010 (the Monday following the July 4th holiday weekend, on which most Courts and many offices were closed, including my own), demanding that the Plaintiff produce documents in response to Document Requests 14 through 17, to which the Plaintiff had objected, otherwise the Defendant's counsel would file a Motion to Compel.

4. The letter was a demand or a threat, not a good faith effort to confer to discuss the Defendant's document requests or to discuss the Plaintiff's objections.

5. The Defendant's counsel's July 5th letter stated,

> Accordingly, the defendant asks that you produce the documents sought. <u>In the event that you fail to provide the disclosure demanded, given this good faith attempt to resolve the issues, I shall move before the Court for the appropriate relief</u>. (emphasis added).

6. Friday morning, July 9th (only four days after the letter was faxed on a federal holiday, and only three days after the

letter was reviewed), the Defendant's counsel filed the instant Motion to Compel, asserting that the Plaintiff had ignored his letter (which demanded production of copies of Complaints filed by the Plaintiff in every Bankruptcy Court in every federal district across the country, for the last ten years), attempting to shift to the opposing party, the requirement of the moving party to make a good faith effort to confer, prior to filing a discovery motion.

7.  In <u>In re Johnson</u>, 408 B.R. 115 (Bankr. S.D. Ohio 2009), the Court said,

> <u>Second, the Court does not believe the actions taken by Hook rise to the level of good faith contemplated by Rule 37(a)(1)</u>. ... Though the Letter indicates Hook is trying "one more time to resolve informally [Trustee's] failure to comply with [Hook's] discovery requests and Interrogatories," <u>the Letter is as much threat as attempt to resolve issues, stating "[W]e demand that you respond properly to the discovery described above not later than noon January 26, 2009. Failure to do so will result in our filing a motion to compel and to request attorney fees."</u> ... <u>The Court simply cannot see how such behavior could satisfy the requirement that movant in good faith attempt to confer and meaningfully discuss the discovery dispute.</u>
>
> Third, <u>having reviewed the Motion to Compel, as well as the email and Letter attached as exhibits, the Court finds no indication that Hook ever conferred or attempted to confer with Trustee.</u> "'[C]onferring' under [Rule 37(a)(1)] must be a personal or telephonic consultation during which the parties engage in meaningful negotiations or otherwise provide legal support for their position." <u>Shuffle Master</u>, 170 F.R.D. at 172. <u>Nothing in the record indicates such a conference was held or attempted.</u>
>
> For the reasons explained above, the Court concludes <u>Hook did not properly certify that she has in good faith conferred or attempted to confer with Trustee in an effort to obtain the desired discovery. Hook's Motion to Compel, therefore, fails to satisfy the requirements of Rule 37(a)(1) and must be denied</u>. (emphasis added).

408 B.R. at 121-122.

8.  The Defendant's counsel in the case at bar, failed to make a good faith effort to confer.  For the reasons set forth in <u>Johnson</u>, the Defendant's Motion to Compel fails to satisfy the requirements of Fed.R.Civ.P. 37(a)(1) and Local Rule 7007-1 and, therefore, the Defendant's Motion to Compel should be denied.

**PLAINTIFF DID NOT RECEIVE THE DOCUMENT REQUESTS UNTIL
JUNE 3, 2010, AND SERVED OBJECTIONS WITHIN 30 DAYS THEREOF**

9. Although not discussed in Defendant's counsel's Motion, the undersigned sent Defendant's counsel an email on June 3, 2010, asking for available times that I could call him to confer regarding several discovery issues that existed as of that date. See copy of June 3, 2010 email to Fred S. Kantrow, attached hereto, within Exhibit A.

10.  In response, Mr. Kantrow sent an email saying that he was about to send an email himself, saying that the Plaintiff had not responded to any of his document demands.  See copy of June 3, 2010 email from Fred S. Kantrow, attached hereto, within Exhibit A.

11.  I immediately responded that I did not recall ever receiving any document requests.  I asked in my email how and when the document requests were served, and requested that Defendant's counsel provide a copy of the cover letter and the document requests to me by reply email at that time.

12.  Later that afternoon, June 3, 2010, Defendant's counsel sent a reply email with Document Requests and a Certification of Service attached, although no cover letter was ever provided.  See copy of June 3, 2010 email from Fred S. Kantrow, attached hereto, within Exhibit A.

13.  I advised opposing counsel upon receipt and review of the document request, that the Plaintiff would respond, but would also be objecting to some of the document requests.

14.  On Friday, July 2, 2010, within 30 days of my receipt of the document requests, the undersigned served objections to four of the seventeen document requests, and given the upcoming holiday, advised in the cover letter that the remaining documents would be provided thereafter.  See copy of July 2, 2010 letter and Objections, attached hereto, marked Exhibit B.

15.  The Defendant's counsel never called me at any time thereafter, either before or after the objections were served, to discuss the Plaintiff's objections.

16.  The Defendant's counsel's Motion fails to advise the Court of these details.

17.  The Defendant's counsel's filing of his Motion to Compel on the morning of July 9, 2010, without first making a good faith effort to confer, followed the Defendant's counsel's receipt of my July 2, 2010 letter, indicating to opposing counsel that we needed to discuss the Defendant's lack of meaningful responses and objections to the Plaintiff's discovery requests, and we needed to reschedule the depositions.  See copy of July 2, 2010 letter, attached hereto, marked Exhibit B.

### PLAINTIFF'S COUNSEL'S CONTINUED
### GOOD FAITH EFFORTS TO CONFER HAVE BEEN REFUSED

18.  Although it was the Defendant's counsel's obligation as the moving party to confer prior to filing the Defendant's Motion to Compel with the Court, it has been the undersigned that has been

–5–

trying to confer with Defendant's counsel regarding the Defendant's Motion to Compel, as well as regarding the Defendant's failure to provide meaningful responses to the Plaintiff's Interrogatories and Documents Requests, and to reschedule the depositions in this matter.

19.   However, the Defendant's counsel has not taken my calls, nor has he returned my calls, so I have been unable to confer with Defendant's counsel regarding the discovery matters, to try to come to some agreement or resolution regarding some or all of them, without Court intervention.   See copies of emails, confirming my good faith efforts to confer with opposing counsel regarding discovery matters, even after he filed this Motion to Compel, attached hereto, marked Exhibit C.

### THE OBJECTIONABLE DOCUMENT REQUESTS – COMPLAINTS FILED IN EVERY BANKRUPTCY COURT FOR THE LAST TEN YEARS ARE NOT RELEVANT TO HILARY STREET'S DEFENSE

20.   The Defendant's counsel seeks a copy of every Complaint filed by the First National Bank of Omaha against Chapter 7 debtors, in every federal district, in every Bankruptcy Court, in the entire United States, for the last ten years, seeking to have a debt excepted from discharge pursuant to 11 U.S.C. Section 523(a)(2)(A) for debts less than $10,000.00, <u>and</u> for debts between $15,000.00 and $20,000.00.

21.   The Defendant's counsel also seeks production of a "listing" of Complaints filed by the First National Bank of Omaha in every federal district, in every Bankruptcy Court in the entire United States, for the last ten years, where the Plaintiff either "withdrew" its complaint or where the Plaintiff lost at trial.

22.    The Defendant's counsel, at paragraph 16 of the Motion to Compel, claims that the "Plaintiff is attempting to hold back on the production of documents that go to the heart of the Defendant's defenses."

23.    To the contrary, the Plaintiff has already produced documents that go to the heart of the Plaintiff's cause of action and go to the heart of this Defendant's circumstances prior to the bankruptcy filing.

24.    The Defendant's alleged defenses to this Complaint seeking to except this debt from her discharge, will involve facts and circumstances regarding Hilary Street's bankruptcy, Hilary Street's financial condition prior to filing bankruptcy, Hilary Street's "totality of the circumstances" (twelve often cited factors considered by many Courts in determining a credit card exception to discharge case), Hilary Street's representation of intent to repay pursuant to the terms of the account agreement, and the bank's justifiable reliance on Hilary Street's representations.

25.    Why did Hilary Street file bankruptcy?  Why couldn't Hilary Street pay her debts?  Why couldn't Hilary Street honor her representation to First National Bank of Omaha to repay her debt pursuant to the terms of her account agreement, by making at least the minimum monthly payments?

26.    Did Hilary Street have a change in circumstances that occurred subsequent to the time she made the charges on the Plaintiff's account, which change in circumstances was the proximate cause of Hilary Street not being able to honor her

representation of intent to repay and the reason she had to file bankruptcy instead?

## THE DEFENDANT HAS NOT MADE ANY SHOWING THAT THIS COMPLAINT IS FRIVOLOUS

27.   Although it was the Defendant's counsel who filed the a Motion to Compel, the Defendant's responses to the Plaintiff's discovery requests were nominal, evasive, and/or nonresponsive, and contained a number of objections on the basis that certain requests were onerous or not relevant.   See copy of the Defendant's Responses to the Plaintiff's discovery requests, attached hereto, marked Exhibit D.

28.   In response to the Plaintiff's Request for Production of Documents, the Defendant produced a Retainer Letter (which was not requested), and a copy of twenty-seven paystubs.   That was all.

29.   The Defendant did not produce a single other document requested such as collection notices (No. 2), tax returns from 2005 through 2009 (No. 3), bank statements (No. 4), and checking account registers and canceled checks (No. 5), claiming they were not in her possession (however, in the Defendant's Answer, it was represented that the Defendant did maintain her financial records).

30.   The Defendant even objected to producing her tax returns (No. 3), in a case which involves her financial situation and her alleged intent to repay a debt.

31.   On the other hand, the Plaintiff has provided the Defendant with hundreds of pages of documents, filling a two inch looseleaf binder, in response to the Defendant's Document Requests

1 through 13, which documents deal with the facts of this particular debtor and this particular case.

32. The Defendant's counsel's three Motions filed to date, rarely mention the Defendant in this case, and fail to provide the Court with any meaningful explanation of the Defendant's defense to this Adversary Proceeding.

33. Instead, the Defendant's counsel seeks discovery of copies of Complaints filed by the Plaintiff over the last ten years in every Bankruptcy Court across the country, on the basis that he has filed a Motion for Sanctions against the Plaintiff and its counsel, the underlying premise being that the present adversary proceeding is frivolous.

34. However, up to this point in time, the Defendant's counsel has not provided any substantiation for the argument that the instant Complaint against this Defendant is frivolous, and the Defendant has failed to provide any meaningful or meritorious defense in the Defendant's Answer or Interrogatory Responses.

35. In contrast, the Complaint and the account statements attached to and incorporated into the Complaint show that this Debtor incurred over $10,600.00 (ten thousand six hundred dollars) of charges on this account in only five months.

36. The Complaint and the account statements incorporated therein, show that this Debtor incurred over $4,000.00 of the abovementioned $10,600.00 of charges on this account, in just twenty days (over $4,000.00 of the charges were made between June 14, 2009 and July 2, 2009).

37.  The Complaint and the account statements incorporated therein, show that this Debtor made multiple charges on the same dates.

38.  The Complaint and the account statements incorporated therein, show that the Debtor made charges at such merchants as Macy's, Fortunoff, The Disney Store, Gamestop, TJ Maxx, Ann Taylor Loft, Victoria Secret, AMZ Gift cards, the GAP, Barnes & Noble, CBV Cablevision (one charge to CBV Cablevision alone was for $659.31), and Petro (one charge to Petro alone was for $939.00).

39.  The $4,000.00 twenty day charging spree concluding the abovementioned $10,600.00 of charges on this account, resulted in the Debtor maxing out the account's credit limit, as shown on the account statement with the closing date of July 13, 2009, within Exhibit A of the Complaint.

40.  After maxing out the account's credit limit, the Debtor failed to make the minimum monthly payments and failed to even make a single payment on this account.

41.  The July 13, 2009 account statement also shows that because the account was past due (the Debtor failed to make the minimum monthly payment that was due on July 2, 2009), the Debtor's ability to use the account had been suspended.

42.  All of this information was contained within the account statements that were attached to and incorporated into the Complaint; the very first pleading filed with the Court and served on the Defendant and her attorney.

43.  The Defendant's counsel, however, has not addressed any of these facts in his Motion to Compel or Motion for Sanctions.

44.   In fact, the Defendant's counsel makes no mention of the charges on this account, the timing of the charges, the amount of the charges, the nature of the charges, the account being maxed out, or the Debtor's failure to make payments on this account after maxing it out, anywhere in his motion papers, while continuing to claim that the Plaintiff's action is frivolous.

45.   The Complaint also provides factual information regarding this Debtor's circumstances at the time of the bankruptcy filing, and the lack of change in the Debtor's circumstances in the months during which the Debtor incurred the charges on this account which are the subject of the Complaint.

46.   Prior to filing the Complaint, the undersigned inquired of the the Debtor's attorney as to why the Debtor filed bankruptcy, why the Debtor was unable to pay the Debtor's monthly bills, if the debtor filed bankruptcy due to a change in circumstances to describe how the circumstances changed and when the change occurred, as well as when the Debtor first contacted his office, had her first conference in his office, and what were the amounts and dates of the Debtor's payments for bankruptcy legal fees or filing fees were, as well as any other information that would be relevant regarding the Debtor's bankruptcy filing.  See copy of January 4, 2010 letter making said inquiries, attached to the Plaintiff's Response in Opposition to the Defendant's Motion to Dismiss and Motion to Impose Sanctions, marked Exhibit A.

47.   The Debtor's attorney did send a responding letter dated January 5, 2010 by facsimile, however, the Debtors' attorney only indicated in his letter the date the Debtor initially contacted his

office.  His letter provided no information at all regarding why the Debtor filed bankruptcy or if the Debtor had a change of circumstances that caused her to no longer to be able to pay the debts she had incurred prior to the bankruptcy filing.  See copy of opposing counsel's letter, dated January 5, 2010, attached to the Plaintiff's Response in Opposition to the Defendant's Motion to Dismiss and Motion to Impose Sanctions, marked Exhibit B.

48.  Opposing counsel makes no mention of the undersigned's initial inquiry prior to filing the Complaint in his Motions, nor does he mention his failure to provide any explanation at all as to why the Debtor filed bankruptcy and could no longer pay her debts, in his Motion to Compel or Motion to impose sanctions.

49.  The Plaintiff has also determined, that between October 2008 and October 2009, this Debtor incurred over $46,000.00 (approximate amount) of her unsecured debt.

50.  The Debtor incurred the following debts on her accounts:

1.  Bank of America       10/08 to 02/09     $10,300.00
    maxed out credit limit   last payment 05/29/09
    No payments in June, July, August, September, October

2.  Bank of America       02/09 to 03/09     $ 1,400.00
    maxed out credit limit   last payment 05/27/09
    No payments in June, July, August, September, October

3.  Capitol One           10/08 to 04/09     $12,700.00
    maxed out credit limit   last payment 06/08/09
    No payments in July, August, September, October

4.  Citibank              11/08 to 07/09     $ 8,400.00
    maxed out credit limit   last payment 05/28/09
    No payments in June, July, August, September, October

```
5.    First Nat'l Bank Omaha   02/09 to 07/09     $10,600.00
      maxed out credit limit   last payment 06/02/09
      No payments in July, August, September, October

6.    HSBC                     07/09 to 08/09     $ 3,300.00
      charging priv. suspended last payment 06/07/09
      No payments in July, August, September, October
```

**Total charged between Oct. 2008 and Oct. 2009   $46,700.00** (approx)

51.    This Debtor already had in excess of $60,000.00 of unsecured debt when she made most of the $10,000.00 of charges on the Plaintiff's account between February 16, 2009 and July 7, 2009.

52.    The Debtor failed to make a single payment on any of her unsecured creditors' accounts set forth above in July, August, September, and October 2009.

53.    The Debtor also maxed out her credit limits on her other unsecured creditors' accounts set forth above or had her charging privileges suspended.

54.    On September 14, 2009, only sixty-two days after making the last charge on the Plainitiff's account, the Debtor met with her bankruptcy attorney.

55.    The Defendant has not provided any credible discovery responses or documents to support any professed intention to repay pursuant to the terms of the account agreement.

56.    Interrogatory No. 12 asked, "If the Defendant intended to repay the Plaintiff for the charges incurred on the Plaintiff's account between February 16, 2009 and July 7, 2009, totaling $10,609.03, state from what source of funds and/or how the Defendant intended to repay said debt, and state why the Defendant

was unable to or did not repay said debt but filed bankruptcy instead."

57.    In response to Interrogatory No. 12, the Defendant stated, "The Defendant's income derived from employment."

58.    Clearly a material factual issue in this case is how the Debtor intended to honor her representation of intent to repay, however, the Defendant's six word response is evasive and meaningless.

59.    This has evidently been the strategy of the Debtor's counsel from the beginning of this matter, to provide as little information as possible, but at the same time, to argue that the Plaintiff's Complaint is frivolous.

60.    There was no meaningful information or explanation provided by Debtor's counsel in response to the Plaintiff's prefiling inquiry letter.

61.    There was no meaningful information or explanation provided by Debtor's counsel in response to the Plaintiff's Complaint in his letter demanding the Plaintiff dismiss the Complaint.

62.    There was no meaningful information or explanation provided by Debtor's counsel in his Motion to Dismiss the Complaint.

63.    There was no meaningful information or explanation provided by Debtor's counsel in his Motion for Sanctions.

64.    In the Answer, the Defendant asserted that she contemplated the discontinuance of making mortgage payments to free up additional disposable income.

65.  Interrogatory No. 13 followed up on that assertion and asked, "If the Defendant did not intend to make her mortgage payments at some point in time, as represented in her Answer, state when she made that decision, and if she actually implemented that decision the date that she implemented that decision, and what her intentions were regarding the disposition of the real property that was subject to the mortgage she did not intend to pay.  If the Defendant did not implement the decision not to make her mortgage payments, state when she changed her mind and why."

66.  In response to Interrogatory No. 13, the Defendant responded, "The Defendant has ceased making mortgage payments".

67.  Again, the Defendant's seven word response is evasive and meaningless.

68.  Interrogatory No. 14 asked, "If the Debtor filed bankruptcy due to a change in circumstances, describe in detail how the Debtors' circumstances changed, and specify the exact dates when those changes occurred."

69.  The Defendant's response to Interrogatory No. 14 was, "The Defendant did not file bankruptcy due to a change in circumstances".

70.  Despite all the Defendant's counsel's Motions (three to date) and unsupported allegations, the Defendant has failed to establish that this Complaint is in any way frivolous, or that this Complaint, as of this date, is not substantially justified.

71.  Therefore, the Defendant's discovery requests that the Plaintiff has objected to, are not relevant to this cause of

action, are beyond the scope of discovery in this matter, and/or are unduly burdensome.

### THE PLAINTIFF'S COMPLAINT IS NOT FRIVOLOUS –
### CASE LAW SUPPORTING PLAINTIFF'S CAUSE OF ACTION

72.  As the Fifth Circuit Court of Appeals, sitting en banc, stated in <u>In re Mercer</u>,

> 'Accordingly, "hopeless insolvency", or inability to pay, at card-use <u>may</u> support finding the debtor did <u>not</u> intend to pay, but <u>only</u> if she was aware of her financial condition and knew she <u>could</u> not (and therefore did <u>not</u> intend to) make even the minimum monthly payment to the issuer.  *See* Restatement (Second) of Torts § 530 cmt. d (intention <u>not</u> to perform "may be shown by any ... evidence that sufficiently indicates its existence, as, for example, the certainty that he would *not* be in funds to carry out his promise" (emphasis added)); <u>Melancon</u>, 223 B.R. at 321 ("If the debtor has <u>no</u> idea how the money will get paid back, or if it will get paid back, then he may hope to repay--he may even want to repay--but he certainly does <u>not</u> intend to repay." (emphasis added)).' See <u>Mercer</u>, 246 F.3d at 409 (emphasis in original).

73.  As the Bankruptcy Court in <u>Choi</u> stated,

> In my view, the debtor's testimony of having a subjective intent to repay is entitled to substantial weight, <u>but it still must be considered in light of all other evidence in the case.  If a debtor's financial condition, viewed in its entirety at the time of a credit card charge, presents a hopeless inability to pay, of which the debtor was aware, this is evidence of a fraudulent intent.</u>  And when these circumstances are present, I find it difficult to side with a debtor who subjectively but irrationally intended to pay. (emphasis added).

See <u>In re Choi</u>, 203 B.R. 397 (Bankr. E.D.Vir. 1996).

74.  In <u>In re Wong</u>, 207 B.R. 822 (Bankr. E.D.Pa. 1997), the Court stated:

> Moreover, <u>the continued use of the Credit Card under circumstances such as these--wherein the Debtor knew or reasonably should have known, that he lacked sufficient income to pay even the minimum amount due for the charges and cash advances that he was incurring during the</u>

> period--evinces a knowing, or at least a reckless, disregard for the truth of the representation implied from such use of the card that he intended [to] pay for the amounts billed to the account according to the terms of Credit Card Agreement. See In re Flynn, 184 B.R. 8, 9 (Bankr. W.D.N.Y. 1995); In re Woolley, 145 B.R. 830, 834-35 (Bankr. E.D.Va. 1991). The Debtor's disregard for the truth or falsity of the representation made to AT&T under these circumstances, whether knowingly or recklessly made, is sufficient to satisfy the knowing misrepresentation element of Code §523(a)(2)(A). See In re Woolley, 145 B.R. at 834-35; In re Cohen, 191 B.R. 599, 605 (D.N.J. 1996), aff'd 106 F.3d 52 (3rd Cir. 1997); In re Berz, 173 B.R. at 162. The Court concludes, therefore, that each time the Debtor used the Credit Card to make purchases or take cash advances between February 13, and April 4, 1995, the Debtor knowingly misrepresented to AT&T that he had both the intent and the ability to repay the debts incurred by such use. See also In re Pursley, 158 B.R. 664 (Bankr. N.D. Ohio 1993)(holding that proof that at the time the debtor used the credit card he knew or should have known that he would be unable to repay the charges incurred constitutes false pretenses, a false representation or actual fraud); In re Meeks, 139 B.R. 559 (Bankr. M.D.Fla. 1992) (same); In re Hansbury, 128 B.R. 320 (Bankr. D.Mass. 1991) (same); In re Lipsey, 41 B.R. 255 (Bankr. E.D.Pa. 1984) (same). 207 B.R. at 828-829. (emphasis added).

75. Therefore, taking into consideration the above facts and caselaw, this case is not frivolous as the Defendant's counsel has argued, but is well grounded, both in fact and in law.

76. The Defendant's counsel may think that various Court's decisions supporting exceptions to discharge under Section 523(a)(2)(A) are frivolous, nonsensical, or will cause debtors unnecessary expense.

77. However, as set forth by the United States Supreme Court in In re Cohen, 118 S.Ct. 1212 (1998):

> The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an "honest but unfortunate debtor." Grogan v. Garner, supra, at 287, 111 S.Ct., at

659-660 (internal quotation marks omitted); see id., at 290, 111 S.Ct., at 661; <u>Brown v. Felsen</u>, 442 U.S. 127, 138, 99 S.Ct. 2205, 2212-2213, 60 L.Ed.2d 767 (1979). Section 523(a)(2)(A) continues the tradition, excepting from discharge 'any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud.' 118 S.Ct. at 1216.

78. Given the facts of this case, and the caselaw regarding credit card nondischargeability, the Plaintiff's case is substantially justified, and not "frivolous", as the Defendant's counsel argues.

79. Therefore, producing Complaints in virtually all cases filed in the last ten years in every Bankruptcy Court across the country, will not change the facts of this case regarding whether or not this Defendant represented she would repay this debt pursuant to the terms of the account agreement falsely, or with reckless disregard for the truthfulness of the representation.

**THE AMOUNT SUED FOR IS DETERMINED BY THE AMOUNT OF ABUSE, PLAINTIFF CANNOT OFTEN SUE FOR AMOUNTS IN EXCESS OF $15,000.00**

80. The Defendant's counsel argues in paragraph 24 of his Motion to Dismiss, that "It is apparent that this Plaintiff and this attorney commence non-dischargeability actions for amounts that are close enough to <u>"nuisance" value</u> such that the cost of defending the litigation may actually be more than the amount of the judgment. <u>However, that amounts to nothing more than scare tactics and an attempt by the creditor to force and coerce a debtor into repaying a debt that should be discharged</u>." (emphasis added).

81. Defendant's counsel, however, is evidently not very familiar with credit card non-dischargeability actions if he thinks

that the amounts in dispute in First National Bank of Omaha's Complaints are different from, or less than the amounts in dispute in other credit card lenders non-dischargeability actions.

82.  The amount in dispute is based upon the amount of charges incurred by that particular Debtor.  The Plaintiff cannot sue to have a debt of $15,000.00 or more excepted from a debtor's discharge, when the charge in dispute is a $3,000.00 cash advance, or when the charges in dispute total $4,000.00 in purchases, or when the entire account balance is $5,000.00.

83.  It sounds as if the Defendant's counsel wants to prohibit the filing of nondischargeability actions below a certain dollar amount, because of litigation costs.  However, the statute has no such provision, and the Defendant has not cited the Court to any legal authority that exception to discharge actions must involve amounts greater than a certain dollar amount.

84.  In fact, Section 523(a)(2)(C) provides for a presumption of nondischargeability for luxury good purchases or services aggregating more than $600.00 within ninety days of the bankruptcy filing and for cash advances aggregating more than $875.00 within seventy days of the bankruptcy filing (for cases filed after April 1, 2010).  These are very modest dollar amounts that Congress has set forth in the presumption portion of Section 523(a)(2).

**THE DEFENDANT'S MOTION FOR SANCTIONS SHOULD BE DENIED, SECTION 523(d) PROVIDES REMEDY IN NOT SUBSTANTIALLY JUSTIFIED CASES**

85.  Defendant's Motion for sanctions is not appropriate.

86.  In <u>In re Nelson</u>, 234 B.R. 528 (Bankr. M.D. Fla. (1999), a Debtor's counsel argued (among other things), that the creditor

" ... and other credit card issuers are using their economically superior position to challenge the dischargeability of debts owed by consumer debtors on credit cards pursuant to Section 523(a)(2), suing consumer debtors and alleging fraud in order to coerce the execution of reaffirmation agreements ... " 234 B.R. at 532.

87. In <u>Nelson</u>, the Court stated,

> ... Section 523(d) expressly provides a remedy for frivolous and baseless suits filed by creditors who sought a determination of the nondischargeability of a debt. <u>This Section permits entry of a judgment in favor of a consumer debtor for costs and reasonable attorneys fees if the court finds that the creditor was not substantially justified in filing the complaint. See 11 U.S.C. Section 523(d). This is the one and only remedy available to a consumer debtor and the Bankruptcy Code does not provide an independent right to sue for recovery.</u> (emphasis added) 234 B.R. at 534.

88. In <u>Nelson</u>, the Court also said,

> The coercion complained of in Count V is that the Defendant threatened the Plaintiffs that if the Plaintiffs did not enter into reaffirmation agreements with the Defendant, the Defendant would file an adversary proceeding under 11 U.S.C. Section 523 for a determination that the entire respective debt was nondischargeable. <u>The problem here is that the Defendant has a legal right to file an adversary proceeding under Section 523 and if it does so frivolously, then a remedy is provided in Section 523(d). It is not coercion to threaten to do that which one has a legal right to do.</u> 234 B.R. at 538-539. (emphasis added).

89. Defendant's counsel's Motion for sanctions uses an award of punitive damages for a willful violation of the automatic stay, as an example of why the Court should award such sanctions in this exception to discharge adversary proceeding.

90. Section 362(k)(1) expressly provides, " ... an individual injured by any willful violation of a stay provided by this section shall recover <u>actual damages</u>, including costs and attorney's fees,

and, in appropriate circumstances, may recover punitive damages"
(emphasis added).

91. Section 523(d), however, contains no such actual damages
or punitive damages language.   Section 523(d) provides "If a
creditor requests a determination of dischargeability of a consumer
debt under subsection (a)(2) of this section, and such debt is
discharged, the court shall grant judgment in favor of the debtor
for costs of, and a reasonable attorney's fee for, the proceeding
if the court finds that the position of the creditor was not
substantially justified, except that the court shall not award such
costs and fees if special circumstances would make the award
unjust." (emphasis added).

92.   The Defendant's Motion for Sanctions pursuant to 28
U.S.C. Section 1927 is also not well-grounded.   The Defendant has
failed to specify how the Plaintiff has vexatiously multiplied the
proceedings in this Adversary Proceeding, and the Defendant has
failed to specify the additional costs caused to this Defendant in
this Adversary Proceeding by any such alleged conduct.

**THE OBJECTIONABLE DOCUMENT REQUESTS –
THE RETAINER AGREEMENT**

93.   The Retainer Agreement between First National Bank of
Omaha and Robert S. Cooper contains attorney-client privileged
information regarding settlement authority for cases being handled
by the attorney.

94.   The case law cited by Defendant's counsel uses the word
"usually" when ruling that retainer agreements are "usually" not

privileged, however, this Retainer Agreement does contain attorney-client privileged information.

95. Additionally, it is the Plaintiff's belief that Debtors' counsel will use the retainer billing terms, if disclosed, for improper litigation advantage and improper negotiating purposes. Although the Defendant's counsel wrongfully accuses the undersigned of causing Debtors' to incur large legal expenses to defend an Adversary Proceeding, that is simply not true.

96. As can already be seen in this case, the party responsible for filing three motion and causing considerable legal time and expense to the parties regarding matters beyond a typical defense of a credit card Adversary Proceeding, is the Defendant's counsel.

**PRIOR CASES WITH ATTORNEYS INVOLVED IN IN RE STAHL INCLUDED TWO PRESUMPTION CASES, ONE OF WHICH INCLUDED A CHECK DEBTOR WROTE TO LAW FIRM TO PAY LEGAL FEES ON PLAINTIFF'S ACCOUNT, AND THE OTHER INCLUDED CHARGES INCURRED AFTER BANKRUPTCY COUNSEL WAS RETAINED**

97. The Defendant's counsel has referred to In re Stahl to support his personal attacks on me.

98. Stahl was, in part, the result of accusations of two Debtors' attorneys, whose clients were the Defendants two presumption cases.

99. Failing to avoid the application of the presumption of nondischargeability might be viewed by some, as debtor-attorney malpractice (except in extenuating circumstances).

100. Accusing a creditor's attorney of filing cases that are not substantially justified, as Mr. Sigmon and Mr. Mitchell did,

based upon alleged prior experiences with that attorney, when those prior experiences involved presumption cases, is not acceptable.

101.   Unfortunately in <u>Stahl</u>, the Plaintiff in that case did not want to appeal the decision.

102.   In a prior case with Attorney Wayne Sigmon, the Defendant's attorney in <u>Stahl</u>, he filed a bankruptcy for a debtor via a Power of Attorney held by the Debtor's daughter.   In <u>Household Credit Services Inc. v Glover</u>, in which I represented the Plaintiff, it was ultimately established by way of Affidavit from a merchant, that the Debtor's daughter made purchases and charges on the Plaintiff's account after she met with attorney Wayne Sigmon regarding filing her father's bankruptcy.

103.   Wayne Sigmon ultimately filed a Motion to Withdraw from the Adversary Proceeding, citing a conflict of interest that he did not know of earlier in the case.   An Affidavit that I obtained from a store merchant, established that the daughter used her elderly father's credit card to purchase a television and trampoline, after meeting with bankruptcy counsel.

104.   The Bankruptcy Court ultimately granted the Plaintiff's Motion for Summary Judgment (upon reconsideration), and the debt was excepted from discharge.

105.   That was the case that Wayne Sigmon and I had prior to <u>Stahl</u>.   <u>Glover</u> was a presumption case, and it involved charges made by a Debtor's daughter on the Debtor's account, after bankruptcy counsel had been retained.   Hardly the basis to claim that I file Complaints that are not substantially justified.   The Court granted the Plaintiff's Motion for Summary Judgment, in a presumption case.

106.    As for my prior experience with Mr. Mitchell, who is referred to in Stahl, in First Deposit National Bank v. Bowyer, a presumption case as well, the charges in dispute included cash advances.

107.    Mr. Mitchell, or his associate, filed a Motion to Dismiss.  I filed a Cross-Motion for Summary Judgment, attaching to the Motion a copy of a check charged to the Plaintiff's credit card account, which the Debtor had written to Mr. Mitchell's law firm, to pay Mr. Mitchell's bankruptcy attorney's legal fees.

108.    Needless to say, shortly after receiving the Cross-Motion for Summary Judgment with the check charged to the Plaintiff's credit account, written to and endorsed by the Debtor's bankruptcy counsel attached thereto, a settlement was negotiated for a lump sum payment for a significant portion of the amount in dispute.  The matter was never argued before the Court but was instead settled before the return date, at the request of opposing counsel.

109.    That was my prior experience with Mr. Mitchell before Stahl.  Again, hardly the basis to claim that I file Complaints that are not substantially justified.  The Defendant's counsel wanted to settle the presumption case prior to the Cross-Motion for Summary Judgment being argued, and the cash advances included a check written on the Plaintiff's account, to the Debtor's bankruptcy attorney to pay his legal fees.

110.    I believe both were respected Trustees and/or bankruptcy attorneys in their Court, as was I (a Trustee and bankruptcy attorney) here in Rochester, but I think they took the matters

personally, and I believe they used the <u>Stahl</u> case as their vehicle for payback.

111. Additionally, the <u>Stahl</u> decision was not written by the Judge, but instead, it was for the most part, the Debtor's attorney's vindictive Brief, which he submitted as a proposed Order, with some minor revisions, and with a signature line for the Judge.

## IN CONCLUSION

112. From a Pacer search of the Bankruptcy Court records in the Eastern District of New York, it appears that in 2009, there were approximately 200 adversary proceedings involving credit card lenders.

113. Only five of those were filed by the Plaintiff, First National Bank of Omaha. Across the entire country, First National Bank of Omaha files only about 17 exception to discharge adversary proceedings a month, approximately only one percent of the bankruptcy filings.

114. As a former law clerk to the Honorable Edward D. Hayes, United States Bankruptcy Judge, in the Western District of New York, Rochester Division, 1984-85, I am disappointed with opposing counsel's tactics, and with the misleading factual and legal assertions and arguments that opposing counsel continues to set forth in the papers that he has filed with the Court.

115. Additionally, the Defendant's counsel has failed to provide any meaningful explanation of the Defendant's defense, while at the same time, claiming the Plaintiff's cause of action is without merit.

116. His refusal to speak with me has caused considerable work on my behalf in order to respond to his Motions containing personal attacks.

117. I represented debtors for a number of years after my clerkship, and I have also been a Chapter 7 Trustee.

118. However, whatever side of a bankruptcy issue I may be on, I try to look to the facts of each case, the legal issues involved, and try to treat opposing counsel with courtesy and respect in resolving the legal dispute between our respective clients, although occasionally I come across attorneys that do not take the same approach.

119. Fortunately, most attorneys are professional in their conduct towards one another, regardless of whether they represent a debtor or a creditor.

**WHEREFORE**, the Plaintiff, First National Bank of Omaha, respectfully requests an Order of this Court:

A. Denying the Debtor's Motion to Compel in its entirety, for the reasons set forth herein, and

B. For such other and further relief as to this Court seems just and proper, including but not limited to reasonable attorney's fees, as well as costs and expenses incurred herein.

Dated: August 13, 2010

/s/ Robert S. Cooper
ROBERT S. COOPER, ESQ., RC0986
Attorney for Plaintiff
Office and Post Office Address
1425 Jefferson Road
Rochester, New York 14623
Telephone: 585-292-1920
Facsimile: 585-292-1925
Email: RCOOPERESQ@aol.com